Marian F. Harrison
US Bankruptcy Judge

Dated: 5/19/2016



# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 313-07626 |
| DAVID PETER BERGE, | ) |
| | ) JUDGE MARIAN F. HARRISON |
| Debtor. | ) |
| | ) Chapter 7 |
| | ) |
| MARKETGRAPHICS RESEARCH | ) ADV. NO. 313-90400 |
| GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID PETER BERGE, | ) |
| | ) |
| Defendant. | ) |

___

## MEMORANDUM OPINION
___

The plaintiff, MarketGraphics Research Group, Inc. (hereinafter "MarketGraphics") filed the above-styled adversary complaint to determine whether its claim against the debtor is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). For the following reasons, which represent the Court's findings of fact and conclusions of law pursuant to Fed. R.

Civ. P. 52(a)(1), as incorporated by Fed. R. Bankr. P. 7052, the Court finds that the complaint should be denied.

## I. PROCEDURAL BACKGROUND

Previously, the debtor and MarketGraphics were parties in the District Court case of ***MarketGraphics Research Group Inc. v. Donald Berge, et al.,*** No. 3:13-cv-00001. The defendants included the debtor, his parents, and a trio of limited liability companies under their control for their roles in allegedly engaging in unfair competition with MarketGraphics in the field of housing-market research. On June 3, 2013, the District Court entered a preliminary injunction against the defendants, including the debtor, and in favor of MarketGraphics based on a non-compete agreement.

On July 12, 2013, MarketGraphics moved for summary judgment in District Court, including six claims against the debtor (copyright infringement, unfair competition, violation of the Tennessee Consumer Protection Act, intentional interference with business relations, and civil conspiracy). On August 6, 2013, MarketGraphics filed a Motion for Entry of Judgment pertaining to its motion for summary judgment, describing the claims on which it sought judgment and the amount in which it sought judgment.

On August 8, 2013, and August 22, 2013, the District Court stayed the proceedings as to Donald Berge and Martha Berge (the debtor's parents), respectively, after they each

filed for bankruptcy protection. On August 22, 2013, the District Court granted MarketGraphics' motion for summary judgment against the debtor and the three LLCs and certified the judgment as final. The debtor filed his voluntary Chapter 7 petition on August 30, 2013.

On October 22, 2013, MarketGraphics filed this adversary complaint to determine the dischargeability of its claim pursuant to 11 U.S.C. § 523(a)(6). Initially, MarketGraphics sought summary judgment based on the prior judgment in District Court, asserting that the judgment was entitled to collateral estoppel. The debtor conceded that collateral estoppel precluded any argument that the injury was willful but asserted that the District Court did not consider whether the injury was malicious. This Court agreed and denied the motion, finding that the District Court judgment did not include a finding of malice, and therefore, whether or not the debtor's actions were malicious was a material disputed fact to be determined at trial. The plaintiff sought an interlocutory appeal of this Court's ruling in the District Court and then in the Sixth Circuit Court of Appeals. After these appeals were dismissed, the matter was set for trial. The debtor having conceded all other elements of 11 U.S.C. § 523(a)(6), the only issue at trial was whether the debtor acted with malice.[1]

---

[1] MarketGraphics continues to argue that all the elements of 11 U.S.C. § 523(a)(6), including malice, were addressed in the District Court's judgment, and therefore, are subject to collateral estoppel. This Court has already considered the collateral estoppel issue, and nothing presented at trial has changed this Court's opinion. The only issue remains whether the debtor acted with malice.

## II. FACTS

MarketGraphics and the debtor's father, Donald Berge (hereinafter "Mr. Berge"), were parties to an agreement (hereinafter the "Associate Agreement") dated January 15, 1997. Mr. Berge collected data every fourth month from subdivisions in five counties in the Memphis area and delivered the information to MarketGraphics. The debtor worked for his father, covering DeSoto County in Mississippi and Shelby County in Tennessee. Collecting this data is known as "driving the market" and involves driving around the subdivisions within the area to determine market growth. The maps used were provided and copyrighted by MarketGraphics. This process took approximately three weeks to complete. The debtor also did pipeline research, such as pull MLS data for reports and look for potential new subdivisions online.

On August 21, 2012, Mr. Berge formed Realysis of Memphis, LLC (hereinafter "Realysis"), as a limited liability company with the debtor as the registered agent and sole member. Unlike MarketGraphics, Realysis provided quarterly reports to its customers with some additional information. Realysis continued to use MarketGraphics' copyrighted maps in gathering data. At this time, the debtor lived in Nashville, but he stayed with his parents and worked out of their home when he was driving the market. On September 28, 2012, Mr. Berge notified MarketGraphics by e-mail of his desire to terminate the Associate Agreement. The Associate Agreement included a non-compete clause. The debtor testified that he was aware of the non-compete clause but his father told him that he had consulted

with an attorney and that the non-compete clause was invalid. The debtor did not know until after the fact that his father listed him as president on the company's web page and that his name went out on invoices, e-mails, and letters. The debtor believed his title to be superficial because his father actually ran the business. The debtor used this title on social media, but from his testimony, it was clear that the debtor was just attempting to bolster his resume. Even when the debtor found out that they might be sued under the non-compete clause, his father again told him not to worry because the non-compete agreement was invalid and besides, the debtor could not be bound by the non-compete agreement because he did not sign it.

### III. DISCUSSION

#### A. DISCHARGEABILITY

Generally, exceptions to discharge are to be construed strictly against the creditor. *Gleason v. Thaw*, 236 U.S. 558, 562 (1915). The burden of proof falls upon the party objecting to discharge to prove by a preponderance of the evidence that a particular debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). The primary purpose of bankruptcy is to grant a "fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367 (2007) (citation and internal quotation marks omitted). Because the bankruptcy discharge is central to a "fresh start," discharge exceptions "are to be strictly construed against the creditor and liberally in favor of the debtor." *Risk v. Hunter (In re Hunter),* 535 B.R. 203, 212 (Bankr. N.D. Ohio 2015) (citations omitted).

## B. 11 U.S.C. § 523(a)(6)

Pursuant to 11 U.S.C. § 523(a)(6), a debt is nondischargeable when the debt is "for willful and malicious injury by the debtor to another entity or to the property of another entity." This discharge exception requires an injury resulting from conduct that is "both willful and malicious." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). "[U]nless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.* at 464 (citation omitted). It is insufficient that a reasonable debtor "should have known" that his conduct risked injury to others. *Id.* at 465 n.10. Instead, the debtor must "will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Id.* "The conduct 'must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. . . . [K]nowledge that legal rights are being violated is insufficient to establish malice.'" *Steier v. Best (In re Best),* 109 F. App'x 1, 6 (6th Cir. 2004) (citation omitted). In other words, "[l]ack of excuse or justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)." *S. Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo),* 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006) (citation omitted).

In the present case, MarketGraphics has failed to show that the debtor acted with the desire to harm MarketGraphics or that he believed injury was substantially certain. If Mr. Berge were the defendant in this adversary, it seems certain that the debt would be non-dischargeable. Mr. Berge was the culprit who concocted this elaborate plan and used his family members, in particular his son, to avoid liability. After listening to portions of Mr. Berge's deposition and hearing his testimony in court, Mr. Berge clearly was not a credible witness. Only after he received a discharge in his own bankruptcy did Mr. Berge change his testimony regarding the debtor's involvement. On the other hand, the debtor was very credible. He was merely a son who worked for his father and believed what his father told him. The Court cannot find any malicious intent in that, and therefore, not all the elements of 11 U.S.C. § 523(a)(6) have been proven.

## IV. CONCLUSION

Accordingly, the Court finds that the plaintiff's complaint should be dismissed and that the debt is dischargeable.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.